## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Troy K. Scheffler, | CIVIL NO.: 15-CV-4436 (DSD/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Gurstel Chargo, P.A., | |
| Defendant. | |

## INTRODUCTION

Defendant Gurstel Chargo, P.A., now known as Gurstel Law Firm, P.C. ("Gurstel") submits this Memorandum of Law in Support of its Motion for Summary Judgment and would respectfully show the following.

## RELIEF SOUGHT

Gurstel requests that the Court grant summary judgment that Plaintiff take nothing in this case.

## SUMMARY JUDGMENT EVIDENCE

The evidence offered in support of this motion is:

    a. the declaration of Amy Goltz; and

    b. the exhibits to that declaration.

This motion is also accompanied by a Statement of Undisputed Material Facts pointing to the specific evidence which supports the relief requested.

1

## SUMMARY JUDGMENT STANDARDS

Summary judgment is governed by FED. R. CIV. P. 56. Rule 56(a) requires that summary judgment be granted in favor of Gurstel if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court views all evidence and inferences in a light most favorable to the nonmoving party. *Id.* at 255. However, the nonmoving party may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324. In order to survive summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial" and offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256; *see also*, FED. R. CIV. P. 56(c)(1)(A). If a plaintiff cannot support each

2

essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

## FACTS RELEVANT TO THE SECOND AMENDED COMPLAINT

Gurstel is a Minnesota law firm that represents, *inter alia*, Discover Bank.    This case is a putative class action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Plaintiff's Second Amended Complaint (hereinafter referred to as "SAC") is predicated upon a relatively simple set of facts:  Gurstel, as counsel for Discover, has been attempting to enforce a judgment against Plaintiff that was granted in 2009.    Plaintiff alleges that he sent a pre-judgment[1] "cease" letter to Gurstel[2], that Gurstel allegedly violated the cease request eight years later by serving a garnishment summons on Financial One Credit Union and forwarding a copy of same to Plaintiff, accompanied by a transmittal letter dated July 29, 2014. (Goltz Ex. 1, SAC ¶ 9). Plaintiff also alleges he sent another "cease" letter on August 3, 2014, (Goltz Ex. 1, SAC ¶ 17), after he received a copy of that

---

[1] On July 31, 2009 a judgment was entered against instant Plaintiff "on behalf of Discover Bank for a credit card debt." Goltz Ex. 1, SAC ¶ 6.

[2] It is unclear what letter Plaintiff refers to as he alleges in the Second Amended Complaint that he sent correspondence on December 22, 2008 and September 2008,  Goltz Ex. 1, SAC ¶ 7, both of which would have pre-dated the Judgment.

garnishment summons. On August 11, 2015, Plaintiff alleges he received a copy of another garnishment summons, also accompanied by a transmittal letter. (Goltz Ex. 1, SAC ¶ 19). It is this 2015 transmittal letter that forms the basis for Count One of the Amended Complaint. (Goltz Ex. 1, SAC ¶ 66.5)

Second, Plaintiff claims that the cover letter sent on July 29, 2015, was deceptive because it contained the sentence "If you have any questions, please contact one of our collection representatives at 1-800-514-0791" (Goltz Ex. 1, SAC ¶ 21).   Plaintiff further claims that Gurstel violated the cease by talking with him after Plaintiff called that number. Plaintiff alleges that Gurstel's cover letter misled him into believing that a lawyer would answer the phone and address his questions regarding the garnishment summons.   Plaintiff theorizes that the transmittal letter's courteous offer of a call-in number to answer questions was actually an insidious bait-and-switch maneuver designed to trap him into being subjected to having a non-lawyer debt collector employee harass him about the underlying debt.   (Goltz Ex. 1, SAC ¶ 34-35).   In reality, Plaintiff presents no actual harassment or abuse in the call that occurred.

Plaintiff has substantial knowledge and expertise regarding debt collection and the FDCPA, having had a lengthy history as a debt

4

collector.  He also has a lengthy history of filing FDCPA suits, and at the time of the call he was being represented by his attorney in this case in other matters, and he had the ability to address any legal question that he might have had to his own attorney.  Gurstel contends that Plaintiff is trying to manufacture a claim where none exists and that it is patently obvious from the transcript of his conversation with Gurstel's employee that the call in question was made for no purpose other than to provoke litigation.

## ANALYSIS

### I. Plaintiff's Amended Complaint Fails As a Matter of Law.

#### A. Defendant notified Plaintiff of a specified remedy.

The FDCPA allows a consumer to cut off certain types of communications by sending what is commonly known as a "cease" or a "C&D".  The specific statutory provision states:

> (c)   Ceasing communication. If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
> (1)   to advise the consumer that the debt collector's further efforts are being terminated;
> (2)  to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3)  where applicable, to notify the consumer that the debt collector or creditor intends to invoke a

5

> specified remedy. If such notice from the consumer is
> made by mail, notification shall be complete upon
> receipt.

15 U.S.C. § 1692c(c). The statute expressly authorizes a debt collector to

communicate with a debtor after receiving a cease letter to notify the

consumer that certain remedies are going to be invoked.

The remedy relevant to this case is post-judgment garnishment.

Plaintiff claims that Gurstel's letter (which notified him of that

garnishment) violated the FDCPA because it invited him to call Gurstel if

he had any questions.  He admits that the letter sent to him notified him

that Gurstel Chargo had exercised the remedy of a garnishment against

his bank account.  *See* Goltz, Ex. 12, Scheffler Dep., 151, l. 5-13:

> 5   Q.  The letter that you complain of, as
> 6       referenced repeatedly in your First Amended
> 7       Complaint, the letter from which you quote
> 8       repeatedly in your First Amended Complaint,
> 9       that letter notified you that Gurstel Chargo
> 10      had exercised the remedy of a garnishment
> 11      against your bank account, correct?
> 12  A.  It did mention that.  That was part of the
> 13      letter.

The Supreme Court has recognized that the exceptions set forth in

Section 1692c(c)(2) and (3) serve to prevent a debtor from using the

statute as a tool to shut down litigation:

> We agree with Heintz that it would be odd if the Act
> empowered a debt-owing consumer to stop the
> "communications" inherent in an ordinary lawsuit and
> thereby cause an ordinary debt-collecting lawsuit to

6

grind to a halt. But, it is not necessary to read § 1692c(c) in that way -- if only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy. Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies.

*Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). Plaintiff's claim runs contrary to both the text of the statute and the interpretation of the Supreme Court.

Plaintiff has made this argument previously, and it was rejected. In *Troy K. Scheffler v. Messerli & Kramer, P.A.*, 791 F.3d 847 (8th Cir. 2015) (*per curiam*), *cert. denied*, 136 S. Ct. 554, 193 L. Ed. 2d 443 (2015) the Eighth Circuit held that a garnishment transmittal letter was a permissible communication that did not violate a cease request.

The primary distinction between Gurstel's letter and the one at issue in *Messerli* is that Gurstel's letter provided a number to call if Plaintiff had questions. In a strikingly similar case, *Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935, 2012 WL 6201175 (S.D. Tex., December 12, 2012), the plaintiff

complained of a post-C&D letter that included the statement: "If I can be of further assistance, please do not hesitate to contact me at xxx.xxx.xxxx or toll free at xxx.xxx.xxxx ext. xxxx." The *Lindley* court concluded that "[c]ontrary to Lindley's argument, the letter's invitation for Lindley to call if he needed any assistance did not transform this informative letter into an effort to collect the debt." *Id.* at *13, *citing Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550, 2008 U.S. Dist. LEXIS 20446, at *4, 2008 WL 723507, *4 (E.D. Mi. Mar. 17, 2008) for the proposition that an invitation to call is a mere courtesy. As a matter of law, Gurstel's letter did not violate 15 U.S.C. § 1692c(c), as it merely informed Plaintiff of the invocation of a remedy. The courtesy of offering a number to call if Plaintiff had questions did not convert the transmittal letter into an FDCPA violation. As one court has observed, "while Congress enacted the FDCPA in order to address many odious practices used by the debt collection industry, friendliness was not one of those odious practices." *Turner v. Asset Acceptance, LLC*, 302 F.Supp.2d 56, 58 (E.D.N.Y. 2004). The sentence of which Plaintiff complains neither violated the cease nor gave rise to a colorable claim.

### B. **Plaintiff waived the cease by calling Defendant.**

Exhibit 2 to the Goltz Declaration is a transcript of the phone call described in Plaintiff's Complaint. It is undisputed that Plaintiff initiated

the call, and it is clear from the call transcript that he chose to stay on the call, engaged in conversation with one of Gurstel's employees, asked questions, and responded to answers from the employee. At no time did Plaintiff demand that the call end or that he be connected to an attorney. At no time did Gurstel's employee refuse to end the call or refuse to allow Plaintiff to speak to an attorney.

Plaintiff nevertheless claims that Gurstel violated his cease request by participating in the phone call that he, himself, initiated. As a matter of law such a claim fails, as Plaintiff waived the cease request when he voluntarily called Gurstel's office and engaged Gurstel's employee in conversation. *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1168 (9th Cir. 2006). "We further note that, as a general rule, 'a party may waive a benefit of a provision of a statute ... enacted ... for his protection.'" *Id.* at 1170 (citing *Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific Hypotheekbank*, 69 F.2d 418, 422 (9th Cir.)). The *Clark* court recognized that a consumer can waive his cease rights under Section 1692c(c) by initiating communication with the debt collector. "Legislative history indicates that Congress enacted the FDCPA to protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'" *Clark*, 460 F.3d at 1169-1170 (citing S.Rep. No. 95-382 at 1 (1977),

*reprinted* in 1977 U.S.C.C.A.N. 1695, 1696, 1698-99.)  "Certainly, there

is nothing inherently abusive, harassing, deceptive or unfair about a

return phone call."  *Clark.* at 1170.  Further, by footnote, the Court

added

> Legislative history also reveals a non-exhaustive list of practices that, in enacting the FDCPA, Congress considered to be illegitimate: "threats of violence; obscene language; the publishing of 'shame lists;' harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks.

*Id.* at FN 4 (citing S.Rep. No. 95–382 at 2, 4, *reprinted in* 1977

U.S.C.C.A.N. 1695, 1696, 1698).  A return telephone call, in and of itself,

is not analogous to these practices.  *Id.*  Indeed:

> [T]o hold that a debt collector may not respond to a debtor's telephone call regarding his or her debt would, in many cases, "force honest debt collectors seeking peaceful resolution of the debt to file suit in order to resolve the debt – something that is clearly at odds with the language and the purpose of the FDCPA."

*Clark.* at 1170 (citing *Lewis v. ACB Business Services*, 135 F.3d 389, 399

(6th Cir. 1998).

Plaintiff chose, in what reasonably could be construed to be a

premeditated design (given his collection expertise and litigation history)

to call Gurstel's office to discuss the account in question.  Gurstel did

not call Plaintiff; thus, no violation of the cease request occurred. The FDCPA does not protect consumers who intentionally distort communications or make irrational claims. *Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935 *5 (S.D. Texas, December 12, 2012) (citing *McMurray v. ProCollect, Inc.* 687 F.3d 665, 669, (5th Cir. 2012); *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir. 2000)).

## C. **Defendant's notification of the garnishment was not deceptive or misleading.**

Plaintiff alleges "Defendant's cover letter's statement, 'If you have any questions, please contact one of our collections representatives at 1-800-514-0791,' was a false, misleading and clandestine attempt to collect the debt in violation of the cease under the false pretext of an invitation to discuss the garnishment."   Goltz Ex. 1, SAC ¶ 25.  In the Eighth Circuit, the violation that Plaintiff alleges is assessed based upon whether an "unsophisticated consumer" would be deceived by the representation or conduct at issue. *Duffy v. Landberg*, 215 F.3d 871, 872 (8th Cir. 2000). "These tests are designed to protect consumers of below average sophistication or intelligence, but they also contain an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (internal citations and

quotations omitted).

Here, as outlined previously, Gurstel's letter provided a telephone number to Plaintiff in case he had any questions.  As the court observed in *Turner*, *supra*, it is both possible and desirable for a creditor to establish cordial relations with its debtors.  The involuntary garnishment process causes many debtors to want to contact their judgment creditors' lawyers, and providing a telephone number in the garnishment transmittal is simply a courtesy to unsophisticated consumers who want to call Gurstel's office.  *See Lindley*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935 *13 (citing *Mabbitt v. Midwestern Audit Serv., Inc.,* No. 07-11550, 2008 WL 723507, *4 (E.D. Mich., March 17, 2008) (invitation to call was a mere courtesy)).

Gurstel's letter speaks for itself.  There is nothing in it that is false or misleading.  The call transcript also speaks for itself.  Gurstel's employee said nothing false or misleading.  On the other hand, the statements by Plaintiff in the call show that the call was made for no purpose other than to try to manufacture a claim.  Plaintiff had no real questions about the garnishment.  He did not ask to speak to an attorney.  He had no need to call Gurstel as he had an attorney.  *See* Goltz Ex. 12, Scheffler Dep. at 88:4 - 88:14.

88

4   Q.  At the time that you called Gurstel Chargo,

```
 5      Peter Nickitas was your lawyer in multiple
 6      cases, correct?
 7   A.  Yes.
 8   Q.  You had the ability to call Mr. Nickitas and
 9      ask all the legal questions you wanted to ask
10       about garnishments, didn't you?
11            MR. NICKITAS:  Object.  It goes to
12       attorney-client privilege.  You don't have to
13       answer that.
14            THE WITNESS:  I could've.
```

Plaintiff is a highly litigious debtor who has boasted to at least one reporter about suing debt collectors.  *See*

http://www.startribune.com/ex-collector-deep-in-debt-knew-how-to-fight-back/99676614/.  While the FDCPA does not prevent a debtor from profiting from non-payment of his debts, it also was not intended to be used as a sword to provoke or set up alleged violations of the Act.    It is clear from the call transcript that this is exactly what Plaintiff attempted to accomplish.

Plaintiff's conduct in this case is similar to that of the plaintiff in *Huebner v. Midland Credit Mgmt.,* No. 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 156246 (E.D.N.Y. November 10, 2016), a case in which a plaintiff "experienced with the Fair Debt Collections Practice Act ("FDCPA"), 15 U.S.C. § 1692, sought to parlay his $131 debt into a technical violation so that he could serve as a class representative in a

case where there was no FDCPA violation . . ." The *Huebner* court observed that:

> . . . plaintiff's conduct was the antithesis of that which the "least sophisticated consumer" would have undertaken. He deliberately ran the collection agent in circles in an effort to confuse her. The least sophisticated consumer would answer a simple question simply, or at least say that he was declining to answer. He would not seek to embroil a collection agent in an existential discussion of the meaning of the word "non-existent." That is not being a "tester." Rather, in a broad sense, that is what used to be called barratry.

*Id.* at *16-17. The call transcript shows that Plaintiff has attempted a similar course of conduct.   The FDCPA was not intended to be used in such a manner.

### D. No "bait and switch" occurred here.

Plaintiff alleges the transmission of the cover letter by Gurstel misled him into believing that a lawyer would address his questions regarding the garnishment.   He claims that the letter was essentially a bait and switch maneuver to trap him into being subjected to a non-lawyer debt collector employee harassing him about the underlying debt. Goltz Ex. 1, SAC ¶ 34-35.  These allegations fail, as Plaintiff never asked to speak to an attorney and was never refused permission to speak with one.  Gurstel had a policy designed to ensure that had he asked to speak with an attorney he would have been able to do so.  Goltz Decl. Plaintiff has no evidence to support the conclusion that because a non-attorney

14

answered a general, inbound line he could not have spoken to an attorney, had he asked.[3]  "Bait and switch" does not occur when there is neither a switch nor an attempt to effectuate one.  The only reason why Plaintiff did not end up speaking with a Gurstel attorney is because he never asked for one.  *See* Goltz Ex. 12, Scheffler Dep. at 150:4 – 24:

150

```
 4   Q.  Mr. Scheffler, I didn't hear you once mention
 5         how did you get my bank account or say
 6         anything about shotgun garnishments?  You
 7         never asked about those things, did you?
 8   A.  I think the conversation kinda went into a
 9         different direction.
10   Q.  I didn't hear you once ask for Mr. Wold.
11   A.  Well, like I told you earlier, I didn't know
12         Mr. Wold's name or anything else for that
13         matter.  I believe I found it out looking at
14         the garnishment summons after the fact, after
15         the phone call.  I noticed his name on there.
16   Q.  You had the garnishment summons in your
17         possession together with the cover letter,
18         correct?
19   A.  Correct.
20   Q.  You didn't say, "I want to speak to an
21         attorney," you said, "Do I need to speak to
22         an attorney or have my attorney do so,"
23         correct?
24   A.  That sounds about right.
```

Plaintiff's bait and switch claim is a mere fantasy based upon assumptions and conjecture.  The summary judgment evidence reveals that he could have spoken with an attorney, had he simply asked; this,

---

[3] The court could take judicial notice that it is a common practice in the legal community that law firm phone lines are commonly answered by non-attorney support staff.

his claims are not supported by any factual evidence and he should take nothing in this case.

## II.   **Plaintiff Is Judicially Estopped from Prosecuting this Action**

### A. **Introduction**

It is a generally recognized proposition that one cannot play "fast and loose with the courts." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987).  As is explained below, Plaintiff has attempted to do just that, telling this court that he has claims against Gurstel and other courts (under oath)that such claims did not exist.

In each case in which an *in forma pauperis* (IFP) affidavit is filed it is the job of the court to assess the IFP applicant's assets and income in order to decide whether the IFP application should be granted.  A lawsuit (or simply a chose in action) is such an asset.  At a time when he knew of the existence of his claims in this case Plaintiff stated under oath in IFP affidavits filed in three other cases that he had no such asset by answering "0.00" in the "other assets" category.

Plaintiff secured IFP orders that were predicated upon his false IFP affidavits.[4]  Put differently, Plaintiff must lose in this case, as he has told courts in other cases, under oath, that his claims in this case did not

_____

[4] This is part of a multi-year pattern of behavior in which plaintiff and his attorney have concealed from courts in this district Plaintiff's assets (various lawsuits that he has filed or threatened to file) and his income from those assets.

exist. As a result, Plaintiff is judicially estopped from prosecuting this action.

Gurstel has provided the Court with a summary of the undisputed facts supporting its judicial estoppel argument in Part B the accompanying Statement of Undisputed Material Facts. Plaintiff's deposition testimony and the exhibits to the Goltz declaration establish those facts.

## B. <u>Judicial Estoppel</u>

"Judicial estoppel is an equitable doctrine which 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016), *quoting New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). The doctrine arises most often in the bankruptcy context, as a debtor who seeks a discharge in bankruptcy must disclose, under penalty of perjury, all of his or her assets, and "[a] potential legal claim is undisputedly an asset and should be claimed as such in a bankruptcy petition." *Harvey v. S. Minn. Beet Sugar Coop.*, No. 02-4934 (PAM/RLE), 2004 U.S. Dist. LEXIS 2923, *5, 2004 WL 368471 (D. Minn. Feb. 26, 2004).[5] *See, also,*

---

[5] "As the Eighth Circuit has made clear, 'the property of the bankruptcy estate includes all causes of action that the debtor *could have brought* at the time of the bankruptcy petition.' *United States ex rel.*

*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (*citing In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir.1999)); *Calhoun v. Wal-Mart*, 2007 U.S. Dist. LEXIS 31918, *1, 2007 WL 1289792 (E.D. Mo. May 1, 2007), *aff'd* at 330 Fed. Appx. 119, 2009 U.S. App. LEXIS 17382 (8th Cir. 2009).   Even contingent and representative claims (*e.g.*, Plaintiff's class claim) must be disclosed or else be subject to judicial estoppel. *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 919 (8th Cir. 2001) (applying judicial estoppel to a plaintiff who had failed to disclose to the bankruptcy court the *qui tam* claims that he then asserted); *Harvey v. S. Minn. Beet Sugar Coop.*,*supra* (applying judicial estoppel to an employment discrimination suit where the plaintiff filed her EEOC complaint three days after her bankruptcy petition was filed, yet her potential cause of action was not disclosed as an asset); *Cover v. J.C. Penney Corp.*, No. 15-515 (RHK/SER), 2016 U.S. Dist. LEXIS 66964 * (D. Minn. May 20, 2016) (applying judicial estoppel to a Plaintiff who hailed to disclose in her bankruptcy filings a cause of action for which she had filed a charge with the EEOC, completed an EEOC intake questionnaire, and been interviewed by an EEOC Investigator more than four months before she filed her bankruptcy petition).

---

*Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913 (8th Cir. 2001) (emphasis added)." *Harvey*, 2004 U.S. Dist. LEXIS 2923 at *5.  There can be no doubt that a lawsuit is a material asset.

In ordinary civil cases, no such disclosure obligation exists. However, plaintiff is a serial filer of civil litigation, and most of the cases that he files are initiated with an application to proceed without payment of costs and an accompanying IFP affidavit. Affidavits that he used in other cases to secure a waiver of his court costs negate the existence of the claims asserted in this case. For example, in *Scheffler v. Tapfury, LLC,* Plaintiff listed his "Other assets (value)" as $0.00. *See* Goltz Ex. 7. In the same affidavit he listed income of $70 and a bank balance of $0.01. Gurstel suggests that this was done in a manner that creates the false impression of candor while in reality delivering the opposite. Gurstel has only addressed in the Goltz exhibits the three IFP affidavits that were filed while Plaintiff knew of his causes of action in this case. If the Court were to take judicial notice of its docket (and Gurstel requests that it do so) it would find that Plaintiff has a multi-year history of failing to disclose in IFP affidavits both his filed and threatened lawsuits and his income from settlements of same.

Plaintiff cannot claim innocence or ignorance. The PACER Docket shows that in the *Tapfury* case it was his attorney in this case, Mr. Nickitas, who filed the IFP affidavit. The same is true in the *McDonough* and *Dohman* cases reflected in the Goltz exhibits.

19

When a plaintiff seeks to proceed *in forma pauperis* he is required to execute an affidavit disclosing his income and assets.  That is so the district court can make an informed decision as to whether the plaintiff should be permitted to proceed without payment of court costs.  The affidavit of inability to pay costs is normally the sole evidence considered by the court in deciding whether to permit the plaintiff to proceed *in forma pauperis.* In this regard L.R. 4.2(a)(2) provides:

> (2) *Proceedings in Forma Pauperis.* If a party seeks to proceed in forma pauperis, the party must present to the clerk the complaint or other case initiating document and an application to proceed in district court without prepaying fees or costs. The clerk must file the case-initiating document as if the filing fee had been paid and must submit the application to the court.

A review of the summary judgment evidence reveals that Plaintiff sought to game the legal system by making contradictory statements to this court and other courts in this district.   On the one hand, he alleges both individual and class claims in this case.   On the other hand, he concealed the existence of this asset (his alleged cause of action) in seeking and obtaining in other cases orders allowing him to proceed without having to pay costs.  Plaintiff is barred from profiting from this deceptive course of conduct under the doctrine of judicial estoppel.

An IFP affidavit is a document signed under penalty of perjury, imposing on the plaintiff the duty to make a complete and accurate disclosure of his income and assets.   Execution of a false pauper's

20

affidavit is grounds for criminal punishment. 18 U.S.C. § 1001; *see, also,*

*Adkins v. E.I.Du Pont de Nemours & Co.*, 335 U.S. 331, 338, 69 S. Ct. 85,

93 L. Ed. 43 (1948) (observing that a false pauper's affidavit might

subject the affiant to criminal liability)  The execution of a false pauper's

affidavit is also serious enough to warrant dismissal of the case in which

it was filed.  *Golden v. Newsome*, 173 Ga. App. 321, 322, 326 S.E.2d

521, 523 (Ga. Ct. App. 1985).

Application of judicial estoppel to statements made in a pauper's

affidavit is not a novel concept.  In *Shayesteh v. Raty*, 404 Fed. Appx.

298, 2010 U.S. App. LEXIS 25246 (10th Cir. 2010), the plaintiff brought

suit against the defendants based upon his alleged ownership of the

contents of a safe deposit box.  However, in a prior proceeding the

plaintiff was allowed to proceed *in forma pauperis*, and the district court

held that "[a]llowing Plaintiff to proceed with his present claims, which

are founded on the allegation that Plaintiff actually held millions of

dollars worth of assets in a safe-deposit box at the time he induced the

court to allow him to proceed *in forma pauperis*," would reward "precisely

the type of fraud on the court which the doctrine of judicial estoppel was

designed to address." *Id.* at *11. The Tenth Circuit Court of Appeals

affirmed, holding that to do otherwise would allow the plaintiff the benefit

of having misled the court that had granted his *in forma pauperis*

application.   That is precisely the circumstance presented here.   If Plaintiff is permitted to proceed with this case then he derives the benefit of having failed to disclose his alleged causes of action in securing leave to proceed IFP in the McDonough, Tapfury, and Dohman cases.

> And as the district court rightly explained, permitting Mr. Shayesteh to pursue claims involving assets he concealed from the criminal court would provide no incentive for candor before federal tribunals and would instead only reward dissembling. This case thus implicates the core concern undergirding, and calls out for application of, judicial estoppel doctrine.

*Id.* at *14.

The Eighth Circuit has held that a court must look to three factors to determine whether judicial estoppel should apply: (1) whether a party's later position is "clearly inconsistent" with its previous position; (2) whether the party succeeded in persuading the first court to accept its position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. *Van Horn v. Martin*, 812 F.3d at 1182.  Applying these factors it is clear that Plaintiff is judicially estopped from prosecuting this case.

## **CONCLUSION**

For the above-referenced reasons, Gurstel respectfully requests this Court grant summary judgment in Gurstel's favor that Plaintiff take nothing in this case.

| Dated: March 1, 2017 | Respectfully submitted, |
|---|---|
| /s/   *Manuel H. Newburger*<br>    Manuel H. Newburger (PHV)<br>    Barron & Newburger, P.C.<br>    7320 N. MoPac Expy., Suite 400<br>    Austin, TX 78731<br>    (512) 639-4022<br>    mnewburger@bn-lawyers.com<br>    Attorney for Defendant | /s/   *Amy M. Goltz*<br>    Amy M. Goltz (#336452)<br>    Gurstel Law Firm, P.C.<br>    6681 Country Club Dr.<br>    Golden Valley, MN 55427<br>    (763) 267-6700<br>    a.goltz@Gurstel.com<br>    Attorney for Defendant |